CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 19, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **WILLIAM ALLEN DARR, JR.,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:24-cv-00891** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **C/O M. SMITH,** | ) | **Senior United States District Judge** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

William Allen Darr, Jr., a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Correctional Officer M. Smith. Darr claims that Smith used excessive force against him in violation of the Eighth Amendment. Smith has moved for summary judgment on the ground that Darr failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). ECF No. 16. Darr has filed a response in opposition to the motion, as well as his own declaration submitted under penalty of perjury. ECF Nos. 19 and 23-1. For the reasons set forth below, the court concludes that Darr has presented sufficient evidence to preclude summary judgment in favor of Smith on the exhaustion defense. Accordingly, Smith's motion for summary judgment is **DENIED**.[1]

**I.      Background**

**A.      Summary of the Claim Against Smith**

According to the verified complaint and Darr's declaration, the events giving rise to this action occurred on July 10, 2024, at Pocahontas State Correctional Center (PSCC). At

---

[1] In light of the court's decision, Darr's alternative motion to defer ruling on the motion for summary judgment pending further discovery, ECF No. 24, will be denied as unnecessary.

approximately 1:30 p.m., inmates on the sealed religious diet were called to receive their meal trays. Darr, who was not on the sealed religious diet, "mistakenly went to chow [too] early." Darr Decl., ECF No. 23-1, ¶ 1. Upon being advised of his mistake, Darr returned to his assigned building, where he encountered Smith. Id. ¶ 3. Following a verbal dispute, Smith escorted Darr to the restrictive housing unit (RHU). Id. Darr claims that once they arrived in the RHU, Smith "maliciously slammed [his] head against the wall," causing him to black out and sustain a laceration. Id. ¶ 5; see also Verified Compl., ECF No. 1, at 2 (describing the use of force). Darr seeks to recover monetary damages in the amount of $17,500.[2] Verified Compl. at 2.

## B.   Evidence Relevant to Exhaustion

### 1.   Inmate Grievance Procedure

The Virginia Department of Corrections (VDOC) has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure (OP) 866.1 C. Patterson Aff., ECF No. 17-1, ¶ 4. Grievable issues include actions of staff that affect an inmate personally. OP 866.1 § III(B)(1) (eff. Jan. 1, 2021, amended Apr. 1, 2023), Patterson Aff. Encl. A, ECF No. 17-1.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally before filing a regular grievance. If a verbal complaint is not resolved to an inmate's satisfaction, the inmate may submit a written complaint. Id. § I(D)(2). The written complaint "must be received by designated staff within 15 days of the original incident or discovery of the incident," and the

---

[2] Smith correctly notes that a claim for monetary damages may only be brought against him in his individual or personal capacity. A claim for damages against Smith in his official capacity would be barred by the Eleventh Amendment. See Adams v. Ferguson, 884 F.3d 219, 225 (4th Cir. 2018) ("The Eleventh Amendment immunizes states from suits seeking money damages. This immunity also applies to judgments against a public servant in his official capacity. In contrast, the Eleventh Amendment does not bar an award of damages against an official in his personal capacity . . . .") (internal quotation marks, citations, and alterations omitted).

designated staff member then has 15 days to provide a response. Id. If an inmate does not receive a timely response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. § I(D)(4).

Regular grievances generally must be submitted within 30 days from the date of the incident or the discovery of the incident. Id. § III(B)(5). If a regular grievance satisfies the intake criteria, staff must accept the grievance, log it into VACORIS, and issue a grievance receipt within two working days. Id. § III(C)(4). When a regular grievance is accepted and logged into VACORIS, the warden or assistant warden is responsible for providing a Level I response within 30 days of the issuance of the grievance receipt, unless a continuance is authorized. Id. § III(F)(2). The response must include a "disposition of whether the grievance is resolvable, indeterminable, or unfounded." Id. § III(F)(1). If an inmate "does not agree with the grievance response [or] the disposition of the grievance," the inmate may submit a grievance appeal within five days of receiving the Level I response. Id. § IV(B). OP 866.1 explains that an inmate satisfies the requirements for exhausting administrative remedies when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." Id. § V(B).

### 2.    Darr's Exhaustion Efforts

In support of the pending motion for summary judgment, Smith submitted an affidavit executed by C. Patterson, the grievance coordinator at PSCC. In the affidavit, Patterson acknowledges that Darr submitted a written complaint on July 12, 2024, pertaining to his allegations against Smith. Patterson Aff. ¶ 15; see also Patterson Aff. Encl. D, ECF No. 17-1 (written complaint alleging that Smith slammed Darr's head into the wall). In response to the

3

written complaint, Investigator H. E. Johnson indicated that another complaint had been submitted through "the tip line" and that the issue was "being dealt with." Patterson Aff. Encl. D.

Patterson also acknowledges that Darr filed a timely regular grievance regarding the same matter on July 30, 2024. Patterson Aff. ¶ 16. On September 10, 2024, Warden T. Hicks provided a Level I response to the grievance, which included information provided by Investigator Johnson. Patterson Aff. Encl. E, ECF No. 17-1. Hicks reported that Darr's complaint had "been turned over to SIU," that it was "currently still under investigation," and that Darr would receive a response following the completion of the investigation. Id. Based on the information provided, Hicks determined that Darr's grievance was "indeterminable." Id. The form included a line noting that Darr could file an appeal to the Regional Administrator within five days if he was "dissatisfied with the Level I response." Id. Patterson's affidavit indicates that Darr did not appeal the Level I response or attempt to file another regular grievance after being notified that the SIU had completed its investigation. Patterson Aff. ¶¶ 17–18.

In the sworn declaration submitted in response to the motion for summary judgment, Darr indicates that he spoke to Investigator Johnson three days after Warden Hicks responded to his regular grievance. Darr. Decl. ¶ 15. According to Darr, Johnson informed him that "nothing else had to be done because the issue was being investigated." Id. By letter dated October 7, 2024, Special Agent J. Acosta advised Darr that the investigation had been completed and that "appropriate action may be taken if required." Darr Decl. Ex. D, ECF No. 23-2. The letter did not inform Darr that he could file another regular grievance if he wished to pursue additional relief, and Darr asserts that he "didn't know to appeal the Level I [response

4

to his initial] grievance because Inv. Johnson told [him] nothing else had to done because it was being specially investigated." Darr Decl. ¶ 17.

## II.    Standard of Review

Under the Federal Rules of Civil Procedure, a party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. When ruling on a motion for summary judgment, the court "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023). "The court . . . cannot weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015).

## III.    Discussion

Smith has moved for summary judgment on the affirmative defense of failure to exhaust administrative remedies. See Gowen v. Winfield, 130 F.4th 162, 176 (4th Cir. 2025) ("Failure to exhaust is an affirmative defense for which the Officers bear the burden of proof."). The PLRA provides that "[n]o action shall be brought" in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 532 (2002), and that "proper exhaustion" is required, which includes "compliance with an agency's deadlines and other critical procedure rules." Woodford

5

v. Ngo, 548 U.S. 81, 90 (2006). Additionally, given the "mandatory language" of the PLRA, courts have no discretion to excuse a failure to exhaust. Ross v. Blake, 578 U.S. 632, 639 (2016).

Nonetheless, because the PLRA only requires the exhaustion of "available" administrative remedies, "a prisoner 'need not exhaust remedies if they are not 'available.'" Griffin v. Bryant, 56 F. 4th 328, 335 (4th Cir. 2022) (quoting Ross, 578 U.S. at 635–36); see also Gowen, 130 F.4th at 176 ("Of course, if an administrative remedy proves 'unavailable' to an inmate, he is considered to have satisfied the exhaustion requirement.") (citing Ross, 578 U.S. at 642). "An administrative remedy is considered unavailable 'if a prisoner, through no fault of his own, was prevented from availing himself of it.'" Id. (quoting Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008)). This includes instances where prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 644. "Although the Supreme Court has not explicitly defined what qualifies as a 'misrepresentation' that 'thwart[s] inmates from taking advantage of a grievance process,'" federal circuit courts "have uniformly held that instructions that are merely misleading but not necessarily clear misrepresentations can thwart an inmate's use of a grievance process." Hardy v. Shaikh, 959 F.3d 578, 585–86 (3d Cir. 2020) (collecting cases). "[T]o defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation." Id. at 588; see also Moss v. Harwood, 19 F.4th 614, 623 (4th Cir. 2021) (collecting cases, including Hardy, that require both

6

an objective and a subjective showing to establish unavailability based on intimidation or misleading statements by prison staff).

Viewing the record in the light most favorable to Darr, the court concludes that a genuine factual dispute exists as to whether Darr was prevented from exhausting his administrative remedies through no fault of his own. Although the warden's Level I response to Darr's regular grievance included a form statement advising him of his right to appeal within five days if he was dissatisfied with the response, the warden specifically noted that Darr's complaint was still under investigation and that Darr would receive a response once the investigation concluded. Additionally, according to Darr, Investigatory Johnson subsequently informed him that "nothing else had to be done" since the matter was being investigated by the Special Investigations Unit (SIU). Darr. Decl. ¶ 15. And once the SIU completed its investigation, Special Agent Costa informed Darr that appropriate action would be taken if necessary, and Costa's letter made no mention of any further obligations on Darr's part. Based on the information provided regarding the SIU investigation, "a reasonable inmate could have concluded that no further action was required to pursue his grievance." Nance v. Delaney, No. 3:17-cv-6409, 2022 WL 14563205, at *10 (D.N.J. Oct. 25, 2022) (finding the objective component satisfied where an inmate "was told on at least two occasions in response to administrative filings that the investigation into the purported assault on him by correctional officers was ongoing"); see also Freeman v. Wetzel, No. 2:17-cv-01506, 2020 WL 6730897, at *10 (W.D. Pa. Aug. 6, 2020), report and recommendation adopted by, 2020 WL 5362050 (W.D. Pa. Sept. 8, 2020) (finding that a reasonable inmate could have concluded that no further action was required to pursue a grievance where an inmate was advised that an investigation remained

7

ongoing and that further administrative action would be taken upon the completion of the investigation). Additionally, Darr's declaration indicates that he was "actually misled" by the officials' representations regarding the SIU investigation. Hardy, 959 F.3d at 588; see also Freeman, 2020 WL 6730897, at *10 (finding the subjective requirement satisfied where the inmate asserted in his affidavit that an administrative letter "confused him by indicating that further action would be taken" and that "he was under the impression that he did not have to file an appeal") (internal quotation marks omitted). The court therefore concludes that Darr has presented sufficient evidence to create a genuine factual dispute as to whether he was prevented from exhausting his administrative remedies through no fault of his own. Consequently, Smith is not entitled to summary judgment on the exhaustion defense.

## IV.    Conclusion

For the reasons stated, Smith's motion for summary judgment on the defense of failure to exhaust administrative remedies, ECF No. 16, is **DENIED**, and Darr's alternative motion to defer ruling on the motion for summary judgment pending further discovery, ECF No. 24, is **DENIED** as unnecessary.

An appropriate order will be entered.

Entered: March 18, 2026

Michael F.
Urbanski
U.S. District Judge
2026.03.18
16:59:45 -04'00'

Michael F. Urbanski
Senior United States District Judge

8